__SERGIO GONZALEZ-DIAZ__                              SF-2255 - Motion to Correct Sentence
Full Name/Prisoner Number
Reg.No. 23362-179
RCDC I
P.O. BOX 1560
__PECOS, TX. 79772-1560__
Complete Mailing Address

United States District Court
Southern District of Texas
FILED

JUL 1 2 2004

Michael N. Milby
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF [SOUTHERN DISTRICT OF TEXAS]
### BROWNSVILLE DIVISION

Criminal Case No. __B-03-CR-377-01__

Civil Action No. B-04-mc-22

*(To be supplied by the Court)*

UNITED STATES OF AMERICA,

        Plaintiff/Respondent,

v.

SERGIO GONZALEZ-DIAZ, aka JORGE LOPEZ-ORDONEZ.
*(Full Name)*
        Defendant/Movant.

---

### MOTION PURSUANT TO 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

---

### CONVICTION UNDER ATTACK

(If movant is attacking a sentence based on a federal conviction to be served in the future, the motion should be filed in the federal court which entered the judgment.)

1. Name and location of the court which entered the judgment of conviction under attack:

    __UNITED STATES DISTRICT COURT__
    __SOUTHERN DISTRICT OF TEXAS__

    __BROWNSVILLE DIVISION__
    __600 E. HARRISON ST.__
    BROWNSVILLE, TX. 78520

SF-2255 - Motion to Correct Sentence

2. Date judgment of conviction was entered  OCTOBER 9, 2003.

3. Case number  B-03-CR-377-01

4. Length and term of sentence  51 MONTHS IN CUSTODY OF BUREAU OF PRISONS

5. Are you presently serving a sentence imposed for a conviction other than the conviction under attack in this motion? Yes ☐  No ☒

6. Name of judge who imposed sentence under attack in this motion
   HONORABLE HILDA G. TAGLE.

7. Nature of the offense involved (all counts)
   BEING FOUND IN THE U.S. AFTER PREVIOUS DEPORTATION.

8. What was your plea? (check one)

   Not guilty ☐    Guilty ☒    Nolo Contendere ☐

9. If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:
   N/A

10. If you entered a plea of guilty pursuant to a plea bargain, state the terms and conditions of the agreement:  DEFENANT ENTERED A PLEA OF GUILTY TO THE SINGLE-COUNT INDICTMENT. THERE IS NO PLEA AGREEMENT IN THIS CASE.

11. Kind of trial: (check one)   Jury ☐    Judge only ☒

12. Did you testify at trial (if any)? Yes ☐  No ☒

2

SF-2255 - Motion to Correct Sentence

## DIRECT APPEAL

13.    Did you appeal from the judgment of conviction? Yes ☐ No ☒

14.    If you did appeal, answer the following:

a) State the name and location of the court where the appeal was filed, the result, the case number and the date of the court's decision (or attach a copy of the court's oppugn or order): _____

__N/A_____

_____
_____
_____

b) State the issues raised:    N/A_____

_____
_____
_____
_____

15.    If you did not appeal, explain briefly why you did not:    MOVANT WANTED TO
APPEAL, HOWEVER, DEFENSE COUNSEL FAILED TO FILE THE APPEAL
AS DIRECTED BY THE MOVANT. THIS IS ONE OF THE CLAIMS PRESENTED
HEREIN IN THIS MOTION: FAILURE TO FILE AN APPEAL._____

## POST-CONVICTION PROCEEDINGS

16.    Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to the judgment under attack in this motion in any federal court? Yes ☐ No ☒

17.    If your answer to question 16 was "Yes," give the following information:

a)    FIRST petition, application or motion.

1)    Name of court __N/A_____

2)    Nature of proceeding _____

3

3)     Claims raised   <u>N/A</u>  _____

_____

_____

4)     Did you receive any evidentiary hearing on your petition, application or motion? Yes ☐   No ☐   N/A

i)     Result  <u>N/A</u>_____

6)     Date of result  <u>N/A</u>_____

7)     Did you appeal the result to the federal appellate court having jurisdiction? Yes ☐   No ☐   If      N/A
you did appeal, give the name of the court where the appeal was filed, the result, the case number, citation and date of the court's decision (or attach a copy of the court's opinion or order):

<u>  N/A</u>_____

_____

_____

_____

_____

8)     If you did not appeal, explain briefly why not:   N/A

_____

_____

_____

b)     As to any SECOND petition, application or motion, give the following information:

1)     Name of court   <u>N/A</u>_____

2)     Nature of proceeding  <u>N/A</u>_____

3)     Claims raised  <u>N/A</u>_____

_____

4)     Did you receive any evidentiary hearing on your petition, application or motion? Yes ☐   No ☐   N/A

SF-2255 - Motion to Correct Sentence

5)   Result  N/A

6)   Date of result  N/A

7)   Did you appeal the result to the federal appellate
     court having jurisdiction? Yes ☐  No ☐  If  N/A
     you did appeal, give the name of the court where
     the appeal was filed, the result, the case number,
     citation and date of the court's decision (or attach a
     copy of the court's opinion or order):

     N/A

8)   If you did not appeal, explain briefly why not:  N/A


c)   As to any THIRD petition, application or motion give the
     following information:

     1)   Name of court  N/A

     2)   Nature of proceeding  N/A

     3)   Claims raised  N/A


     4)   Did you receive any evidentiary hearing on your petition,
          application or motion? Yes ☐  No ☐  N/A

     5)   Result  N/A

     6)   Date of result  N/A

     ;7)  Did you appeal the result to the federal appellate
          court having jurisdiction? Yes ☐  No ☐  If  N/A
          you did appeal, give the name of the court where

5

SF-2255 - Motion to Correct Sentence

the appeal was filed, the result, the case number,
citation and date of the court's decision (or attach a
copy of the court's opinion or order): _____N/A_____

_____
_____
_____
_____
_____

8)    If you did not appeal, explain briefly why not: _N/A_____

_____
_____
_____

## CLAIMS

18.    State concisely every claim that you are being held unlawfully. Summarize briefly
the facts supporting each claim. If necessary, you may attach extra pages stating
additional claims or supporting facts. You should raise in this motion all available
claims for relief which relate to the conviction under attack.

**CLAIM ONE:** WHETHER THE GOVERNMENT VIOLATED PETITIONER'S RIGHTS
UNDER THE VIENNA CONVENTION TREATY ON CONSULAR RELATIONS AND
THE SIXTH AMENDMENT RIGHT TO CONSULAR NOTIFICATION AND ASSIS-
TANCE.

Supporting facts (tell your story briefly without citing legal authority or argument):
PLEASE SEE MEMORANDUM OF LAW IN SUPPORT OF THIS §2255 MOTION.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

6

SF-2255 - Motion to Correct Sentence

**CLAIM TWO:**  WHETHER PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT SENTENCING.

Supporting facts (tell your story briefly without citing legal authority or argument):

PLEASE SEE ATTACHED MEMORANDUM OF LAW IN SUPPORT OF §2255 MOTION.

**CLAIM THREE:**  FAILURE TO FILE AN APPEAL AS DIRECTED BY THE MOVANT.

Supporting facts (tell your story briefly without citing legal authority or argument):

PLEASE SEE ISSUE # 3 PER THE ATTACHED MEMORANDUM OF LAW IN SUPPORT OF §2255.

7

**CLAIM FOUR:**    N/A _____

_____

_____

_____

_____

_____

Supporting facts (tell your story briefly without citing legal authority or argument):

   N/A _____

_____

_____

_____

_____

_____

_____

_____

_____

19.    If any of the claims listed in 18 were not previously presented, state briefly what claims were not so presented, and give your reasons for not presenting them:

    N/A _____

_____

_____

20.    Do you have any petition, application, motion or appeal now pending in any court, either state or federal, regarding the conviction under attack?
Yes ☐   No ☒   If "Yes," state the name of the court, case file number (if known), and the nature of the proceeding:    N/A _____

_____

_____

_____

## SUCCESSIVE MOTIONS

21.    If you are raising a claim which you have not presented in a prior motion. have you obtained an orde, from the United States Court of Appeals for the instant Circuit authorizing this district court to consider the motion. Yes ☐  No ☒   Please attach a copy of the order.     N/A

## <u>LEGAL REPRESENTATION</u>

22.    Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a)    At preliminary hearing   RICHARD RODRIGUEZ, ESQ.,
1117 E. HARRISON AV.
HARLINGEN, TX. 78550
    Tel: 956-425-4992

(b)    At arraignment and plea   SAME AS ABOVE

(c)    At trial _____   SAME AS ABOVE

(d)    At sentencing _____ SAME AS ABOVE

(e)    On appeal _____ N/A

(f)    In any post-conviction proceeding   N/A

(g)    On appeal from any adverse ruling in a post-conviction proceeding _____
    N/A

SF-2255 - Motion to Correct Sentence

## OTHER CONVICTIONS

23. Were you sentenced on more than one count of any indictment or on more than one indictment in the same court and at the same time?
Yes ☐   No ☒

24. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack? Yes ☐   No ☒

   (a) If so, give name and location of court which imposed sentence to be served in the future:  N/A _____
   _____
   _____
   _____

   (b) And give date and length of sentence to be served in the future  N/A
   _____
   _____
   _____

   (c) Have you filed, or do you contemplate filing, any application attacking the judgment which imposed the sentence to be served in the future? Yes ☐   No ☒

Wherefore, movant prays that the court grant him such relief to which he may be entitled in this proceeding.

N/A_____              _____
Signature of Attorney (if any)          Movant's Original Signature

N/A_____
(Attorney's full address and
telephone number)

10

SF-2255 - Motion to Correct Sentence

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the movant in the above action, that he/she has read the above pleading and that the information contained therein is true and correct. 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed at  RCDC                                    On  July 2, 2004
                (Location)                                              (Date)

Movant's Original Signature

11

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Respondent, | § § § § | |
| v. | § § § | Case No. B-03-CR-377-01 |
| SERGIO GONZALEZ-DIAZ Movant/ Petitioner. | § § § § | CIVIL No. [        ] |

MEMORANDUM OF LAW IN SUPPORT OF MOTION

TO VACATE, SET ASIDE OR CORRECT SENTENCE

AND CONVICTION UNDER 28 U.S.C. §2255

---

MOVANT: PRO-SE
SERGIO GONZALEZ-DIAZ
Reg.No. 23362-179
REEVES COUNTY DETENTION CENTER
P.O. BOX 1560
PECOS, TX. 79772-1560

ASSISTANT U.S. ATTORNEY:

OSCAR PONCE, ESQ.,
600 E. HARRISON ST.
SUITE # 201
BROWNSVILLE, TX. 78520-7155

**DETAINED**

ISSUE No.1

WHETHER THE GOVERNMENT VIOLATED PETITIONER'S RIGHTS UNDER THE VIENNA CONVENTION TREATY ON CONSULAR RELATIONS AND THE SIXTH AMENDMENT RIGHT TO CONSULAR NOTIFICATION AND ASSISTANCE.

---

## THE ROLE OF THE VIENNA CONVENTION ON CONSULAR'S RELATIONS TREATY

In 1963, the United States and several other nations, agreed that, foreign nationals facing criminal prosecution, outside their native land, deserved the protection of Consular assistance. This agreement was codified in Article 36, of the Vienna Convention on Consular Relations (VCRR). Vienna Convention on Consular Relations, April 24, 1963, TIAS 6820, 21 U.S.T. 77. The United States Congress ratified the Treaty in 1969. As a result of the ratification, it became binding under the Supremacy Clause of the United States Constitution[1]

Article 36 of the Vienna Convention on Consular Relations requires that when a foreign national is arrested, the country detaining him MUST give him IMMEDIATE [NOTICE] of his rights to see and communicate with his consular representative. If the prisoner requests, Article 36, further requires arresting authorities to notify the consular post and forward any communication from the detainee. Vienna Convention, Art. 36 (1).

The United States Department of State has recognized that:

"The Vienna Convention contains obligations of the highest order and should not be dealt with lightly. Article 36,

---

n.1 "This Constitution, and the laws of the United States ... and all treaties made, or which shall be made, under the authority of the United States, shall be the Supreme law of the land." U.S. Const. Art. VI. See also, Foster & Elam v. Neilson, 27 U.S. (Pet.) 252, 314 (1829).

¶ 1(b) requires the authorities of the receiving state
to notify the consular post of the sending state without
delay, of the arrest, or commitment of a national of the
sending state, if that national so requests. While there
is no precise definition of delay, it is the Department's
view that such notification should take place as quickly
as possible and in any event, no later than the passage
of a few days."[2]

As a general rule, Habeas Corpus relief is available in

cases involving the denial of a fundamental or constitutional right.

Although, the type of claim most commonly raised in post-conviction

proceedings involves an alleged constitutional violation, courts

have also held that certain fundamental rights are cognizable in

habeas proceedings, even where no constitutional violation is all-

eged. Above all, habeas corpus is available "When there is no other

adequate remedy at law." **Ex Parte Drake,** 883 S.W. 2d 213, 215

(Tex.Crim.App.1994).

Petitioner was never informed of his rights under the

Vienna Convention Treaty. The only question for this Court is the

remedy available to him. Because the Vienna Convention Treaty is

self-executing, i.e., it provides a personal right enforceable by

the Petitioner himself, it may be raised in the instant postconv-

iction action. Further, said violation of the Treaty, implicated

Petitioner's right to Process that's Due. No harm needed be shown

in this case, as the violation of the Treaty tantamounts to a fun-

damental miscarriage of justice.

---

N.2  Ruiz-Bravo: Herman, SUSPICIOUS CAPITAL PUNISHMENT, (3) San
Diego Just. J. 396-97 (1995) (quoting Department of State File
L/M/SCA: Department of State Digest, October 24, 1973, Pg. 161).

"Treaties are contracts between sovereigns." **Tabion v.**
**Mufti**, 73 F.3d 535, 537 (4th.Cir.1996). Therefore, while it may
appear that only the signatory nations have standing to enforce a
treaty, an exception exists, however, if a treaty confers rights
on individuals. **See Argentine Republic v. Amerada Hess Shipping Co.**[3]
The question thus becomes whether the Convention confers individual
rights. The language of the Convention states that law enforcement
officials shall tell the arrestee of the arrestee's right to con-
tact the consul. **See Convention Article 36.**

Three factors indicate that Article 36 seeks to benefit
individuals. First, the history of the Convention indicates that
the drafters intended to create rights for individuals. **See Mark**
J.Kadish, **Article 36 of the Vienna Convention on Consular Relations:**
**Search for the Right to Consul**, 18 Mich.J.Int'l L. 565, 594-602
(1997) (discussing the drafting history). Second, some foreign
nations and United States agencies have interpreted the Convention
as protecting individual rights. **See generally id.** at 589-603.

Third, case law indicates that individuals can enforce the
Convention. For example, the Ninth Circuit has stated that the
Convention benefits consular authorities BY MEANS OF benefitting
individuals. In **United States v. Calderon-Medina**, 591 F.2d 529 (9th.
1979), the Ninth Circuit considered whether a regulation that was
promulgated to effectuate the Convention was designed to benefit

---

N.3   488 U.S. 428, 442, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989).

3

individuals. In doing so, the Ninth Circuit considered whether art-
icle 36 was itself designed to protect individuals. The Ninth Cir-
cuit concluded: "[P]rotection of some interests of aliens as a class
is a corollary to consular efficiency. This is evident because con-
sular functions listed in article 5 of the Convention include 'help-
ing and assisting nationals ...'" **Id.** at 531 n.5. Accordingly, the
Ninth Circuit held that the regulation "serves a purpose of benefit
to the alien." **Id.** at 531. This of course, begs the question, because
the Convention bestows benefits to the alien, what can be done leg-
ally to enforce compliance with the Convention?

Several courts have allowed individual claims of violations
of the Convention to proceed. See, e.g., **Breard v. Greene**, 523 U.S.
371, 376-77 (1998)(per curiam) (denying certiorari on a claim of a
violation of the Convention without discussing the standing issue,
but stating that the Convention "arguably confers on an individual
the right to consular assistance following arrest"); **Villafuerte v.
Stewart,** 142 F.3d 1124 (9th.Cir.1998)(entertaining a claim of a vio-
lation of the Convention without discussing the standing issue);
**Faulder v. Johnson,** 81 F.3d 515, 520 (5th.Cir.1996), **cert.denied,**
_____ U.S. _____, 117 S.Ct. 487 (1996) (same); see also Kadish, supra,
at 589-603 (arguing that the Convention confers enforceable individual
rights). **But see Osborne v. British Airways PLC Corp.**, 198 F.Supp.2d
901 (S.D.Tex.2002)(Discussing the Warsaw Convention Treaty [an intern-
ational treaty governing the liability of air carriers engaged in the
international transportation of passengers and cargo] and holding that
as a ratified treaty of the United States, it is equal in stature and
force TO ANY OTHER FEDERAL LAW).

4

Nonetheless, the Supreme Court has recognized that TREATIES can create individually enforceable rights in some circumstances. See, e.g., **U.S. v. Alvarez-Machain**, 504 U.S. 655, 667-68 (1992) (citing **U.S. v. Rauscher**, 119 U.S. 407 (1886)); **Argentine Republic v. Amerada Hess Shipping Corp.**, 488 U.S. 428, 442-43 (1989): "Whether or not treaty violations can provide the basis for particular claims or defenses thus appears to depend upon the particular treaty and claim involved." In the instant case, it is clear that the Vienna Convention was violated whereby the movant was isolated at a critical moment from Consular Officials whose advice and intervention may have made a difference in the case. Please note that the movant is in no way suggesting that he was not engaged in criminal conduct and that the indictment should be dismissed, or that his conviction should be reversed based on an apparent violation of the Convention. What the movant hope that this Honorable Court would provide a suitable remedy for said violation of the Vienna Convention. This is so, for the simple fact that the Supreme Court in **Breard v. Greene,** was also puzzled over what the proper remedy for a violation of the Convention would be, while acknowledging that "Treaties are recognized by our Constitution as the SUPREME LAW OF THE LAND." Importantly, the Vienna Convention, which confers on an individual the right to consular assistance following arrest, has continuously been in effect since 1969. **Id.** Confronted in recent years with numerous claims based upon the Vienna Convention and without the benefit of a definitive statement from the Supreme Court, federal courts have generally side-stepped the issue, without even hinting a downward departure pursuant to U.S.S.G. §5K2.0, that being, a lesser sentence for the affected movant. See e.g., **U.S. v. Santos,** 235 F.3d 1105, 1108 (8th.Cir.2000);

5

**U.S. v. Page**, 232 F.3d 536, 540 (6th.Cir.2000); **U.S. v. Lawal**, 231 F.3d 1045, 1048 (7th.Cir.2000), **cert. denied**, 531 U.S. 1182 (2001); **U.S. v. Chaparro-Alcantara**, 226 F.3d 616, 621 (7th.Cir.), **cert. denied**, 531 U.S. 1026 (2000); **U.S. v. Cordoba-Mosquera**, 212 F.3d 1194, 1196 (11th.Cir.2000); **U.S. v. li**, 206 F.3d 56, 66 (1st.Cir.), **cert. denied.**, 531 U.S. 956 (2000); and **U.S. v. Lombera-Camorlinga**, 206 F.3d 882, 885 (9th.Cir.)(en banc), **cert. denied.**, 531 U.S. 991 (2000).

While all of the above mentioned courts refused to craft a suitable judicial "remedy," it is important to recognize, that they were hardpressed to rule that the Vienna Convention Treaty should not be given the full force and effect of the Supreme Law of the land.

Accordingly, the movant urges this Court to provide a suitable remedy, for example, in the form of a 2 point reduction **nunc pro tunc.** Movant is aware that defense counsel failed to present this important issue at sentencing. In the event, the opposing party invokes the procedural default rule, to prevent this claim from coming forward, the movant seeks relief under the [cause] requirement, inasmuch that his counsel was ineffective by not marshalling this issue before the court. Ineffective assistance of counsel satisfies the 'cause' requirement of procedural default. See **Murray v. Carrier,** 477 U.S. 478 (1986) (Ineffective assistance of counsel is "cause."). Movant is aware that where an inmate complains that counsel was ineffective because he did not object to something or file a particular motion, that the courts grant significant deference, as such actions fall "squarely within the ambit of trial strategy." **Murray v. Maggio,** 736 F.2d 279, 283 (5th.Cir.1984)(per curiam). Courts are not inclined to find ineffective assistance in such cases because they generally find such actions would have been frivolous

6

anyhow and because the objections and or issues would have been over-
ruled. See Koch v. Puckett, 907 F.2d 524, 527 (5th.Cir.1990); and U.S. v.
Flores-Ochoa, 139 F.3d 1022, 1024 (5th.Cir.1998).

    While,) it is highly plausible that this Court would have overruled
the issue of the Vienna Convention Treaty violation,) at the same token,)
there were several valid reasons for the Court to have considered the
issue even if eventually the Court would have negated such. First,) had
counsel raised the issue,) it would not have been frivolous. In stark con-
trast to the arguments available to counsel in Koch and Flores-Ochoa,
Movant's attorney had valid arguments. In Koch, the court found that
Koch did not offer legitimate reasons that counsel could have argued to
suppress the statements he wanted suppressed by way of a motion. See Koch,)
907 F.2d at 526-30. In Flores-Ochoa,) the Fifth Circuit declined to find
counsel ineffective for not filing a motion for continuance,) even though
there is no doubt the accused would have benefitted from a continuance,
because it was not "reasonably probable" that the court would have gran-
ted the continuance. See Flores-Ochoa, 139 F.3d at 1024.

    Here,) counsel had several legitimate arguments he could have made
to meet the Sixth Amendment objectives of ensuring that the sentencing
was adversarial and fair. In fact,) he did not have to take heroic steps.
His strategy at sentencing could have been very simple given the deference
lawyers are provided under Strickland. For example,) it would have been
enough for him to seek a downward departure where his client suffered a
Treaty violation that is on par with a Constitutional violation. See
e.g., U.S. v. Farouil, 124 F.3d 838, 845 (7th.Cir.1997) ( Directing the
district court to consider Farouil's status as a deportable alien as a
factor for a lesser sentence,) the district court did give a reduction in

sentence). It is well established that district courts now routinely give downward departures based on a host of conditions,' e.g., an alien's concession to deportation; If the offense was outside the 'Heartland' of regulatory offenses; when the defendant has suffered extraordinary childhood abuse; pre-sentence rehabilitation; extreme hardship on the defendant's family members, etc.,' In other words, just by raising the instant issue as a means to secure a lesser sentence, counsel would have had plenty to say to make him an effective advocate. **See Rivers v. Roadway Express, Inc.**, 511 U.S. 298, 312 (1994) ("No system of law,' whether it be judge made or legislatively enacted,' can be so perfectly drafted as to leave no room for dispute.").

In the instant case, defense counsel was well aware that the movant was a foreign Citizen. Counsel was unaware of the provisions of the Vienna Convention and failed to investigate or research the Law. Counsel failed to advise the movant of his Rights under the Convention, and failed to assert or protect those rights, or to properly raise the issue before the Court.

Counsel failed to file the appropriate Motion for a downward departure for the government's violation of the terms of the Convention. These failures affected the movant's substantial rights; denied him Process that's Due; and defense counsel's lack of due diligence and negligent performance per this issue constitutes Ineffective Assistance of Counsel. See e.g., **Murphy v. Netherland**, 116 F.3d 97, 110 (4th.Cir. 1997) (Holding that "a reasonably diligent attorney would have discovered the applicability of the Vienna Convention to (his) Foreign National Defendant and that in previous cases claims under the Convention have been raised.").

8

ISSUE No.2: WHETHER COUNSEL'S ABANDONING THE PETITIONER UPON SENTENCING CONSTITUTED "PER-SE" INEFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO FILE AND PRESERVE PETITIONER'S RIGHT RIGHT TO A DIRECT APPEAL.


The Petitioner submits that his attorney failed to file a NOTICE OF APPEAL in order to preserve his client's right to a direct appeal. **See Coppedge v. U.S.** 369 U.S. 438 (1962). After sentencing, Petitioner submits that he wanted to appeal, defense counsel informed him that he need not worry, that he will come by later to debrief him at the county jail, Brownsville, Texas. Defense counsel never did show up as promised and 5 days later, Petitioner was moved from the Brownsville County jail to another local jail in Karnes City, Texas, where he remained for 1 week, before being moved to the Federal Detention Center in Houston, Texas. Petitioner remained in the FDC in Houston for 7 months until he was transferred to his present place of confinement, Reeves County Detention Center, Pecos, Texas. During all that period at no time did defense counsel, Richard Rodriguez, attempted to contact Petitioner about the filing of a direct appeal or for that matter, the filing of a 'notice of appeal' a boiler-plate document that once filed would have preserved Petitioner's right to a direct appeal. **See Rodriguez v. U.S.** 395 U.S. 327 (1969) (finding that the right to appeal is of paramount importance to a layman defendant).

9

The Constitutional guarantee of effective assistance
of counsel applies to criminal prosecution, without regard
to whether counsel is retained (this case) or appointed.
**See Strickland v. Washington,** 466 U.S. 668 (1984); and
**Douglas v. California,** 372 U.S. 353, 358 (1963) (noting the
benefit of "Counsel's examination into the record, research
of the law, and marshalling of arguments on client.s behalf.").

If a legally trained defendant was convicted in an er-
ror free trial of an open-and-shut case, his lawyer presum-
ably would not be deficient in failing to explain the op-
tions. Petitioner is illiterate in Federal procedural and
and substantive law, and obviously depended wholeheartedly
on his attorney's course of direction. At sentencing, coun-
sel moved the Court for a downward departure, to which the
court obliged and as a result petitioner ultimately received
a lesser sentence than he was ostenibly exposed to., i.e.,
a higher sentence.

In this regard, petitioner admits that his counsel did
perform quite efficiently, however counsel's job did not end
there. Counsel [failed] to inform petitioner about his appel-
late rights. "Nor is this a case in which the judge during
the plea colloquy so fully explains appeal rights and pos-
sible issuea as to obviate counsel's need to do the same;
such a possibility is never very likely and exists only at
the furthermost reach of theory, given a defendant's right
to adversarial representation." **Roe v. Flores-Ortega,** 528 U.S.
470, 488 n.1 (2000) (Souter,J., concurring and dissenting in part).

In **Strickland,** the Supreme Court explicitly noted that a
lawyer has a duty "to consult with the defendant on important de-
cisions ... in the course of the prosecution." **Id.,** at 688. The
decision whether to appeal is one such decisions. Since it can-
not be made intelligently without appreciating the merits of
possible grounds for seeking review.

**Id., Flores-Ortega,** at 488, see also; **Peguero v. U.S.,,**526
U.S. 23, 30-31 (1999) (O'CONNOR, J., concurring); **Rodriguez
v. U.S.,,** 395 U.S. 327, 330 (1969) and the potential risk to
the appealing defendant, a lay defendant needs help before
deciding. If the crime is minor, the issues simple, and the
defendant sophisticated, a 5-minute conversation with his
lawyer may well suffice; if the charge is serious, the pot-
ential claims subtle, and a defendant uneducated, hours of
counseling may be in order. But only in the extraordinary
case will a defendant need NO ADVICE OR COUNSEL whatsoever.
**Id.,** (emphasis supplied).

To the extent this Court's attention is directed to the
statements of "prevailing professional norms," **Strickland,**
466 U.S. at 688 (**Strickland's** touchstone of reasonable rep-
resentation), they are consistent with common sense in req-
uiring a lawyer to consult with a client before the client
makes his decision about appeal. Thus, ABA Standards for
Criminal Justice 21-2.2(b) (2d ed. 1980):

"Defense counsel should advise a defendant on the mean-
ing of the court's judg-ment, of defendant's right to
to appeal, on the possible grounds for appeal, and of
the probable outcome of appealing. Counsel should also
advise of any post-trial proceedings that might be pur-
sued before or concurrent with an appeal. While counsel
should do what is needed to inform and advise defendant,
the decision whether to appeal, like the decision whether
to plead guilty,

/

/

/

/

/

11

must be the defendant's own choice."

As a matter of import, there is no claim here that
waived his right to appeal as part of his plea agreement; although
he pleaded guilty, the record shows that he and the Government
argued for different sentences, and he had little understanding of
the legal system. The fact of the plea is thus irrelevant to the
disposition of the instant case.

See also ABA Standards for Criminal Justice, Defense Funct-
ion 4-8.2(a) (3d ed.1993) (stating that trial counsel "should
explain to the defendant the meaning and consequences of the court's
judgment and defendant's right of appeal" and "should give the
defendant his or her professional judgment as to whether there are
meritorious grounds for appeal and as to the probable results of
an appeal"); id., 4-8.2, Commentary ("[C]ounsel [has the duty] to
discuss frankly and objectively with the defendant the matters to
be considered in deciding whether to appeal .... To make the defen-
dant's ultimate choice a meaningful one, counsel's evaluation of
the case must be communicated in a comprehensible manner....
[T]rial counsel should always consult promptly with the defendant
after making a careful appraisal of the prospects of an appeal");
ABA Standards for Criminal Justice 21-3.2(b)(i).

So also the ABA Model Code of Professional Responsibility,
EC 2-31 (1991), provides that "Trial counsel for a convicted defen-
dant should continue to represent his client by advising whether
to take an appeal...." Likewise ABA Model Rule of Professional Con-
duct 1.3, Comment (1996): "[I]f a lawyer has handled a judicial
or administrative proceeding that produced a result adverse to the

12

client but has not been specifically instructed concerning
pursuit of an appeal, the lawyer should advise the client of
the possibility of appeal before relinquishing responsibilty
for the matter."

Restatement (Third) of the Law Governing Lawyers §31 (3) (Pro-
posed Final draft No.1, Mar. 29, 1996) embodies the same stan-
dards: "A lawyer must notify a client of decisions to be made
by the client ... and must explain a matter to the extent rea-
sonably necessary to permit the client to make informed decis-
ions regarding the representation."

While **Strickland's** disclaimer that no particular set of
rules should be treated as dispositive respects the need to
defer to reasonable "strategic choices" by lawyers, **id.**, at
690, no such strategic concerns arise in this case. Strategic
choices are made about the extent of investigation, the risks
of a defense requiring defendant's testimony and exposure to
cross-examination, the possibility that placing personal back-
ground information before a jury will backfire, and so on. It
is NOT, however, an issue of "strategy" to forego the right
of appeal or the opportunity to seek an appeal.

In the instant case, counsel failed to discuss frankly
and objectively with petitioner the matters to be considered
in deciding whether to appeal "when there is reason to think
either (1) that a rational defendant would want to appeal or
(2) that this particular defendant reasonably demonstrated to
counsel that he was interested in appealing. " **Id., Flores-
Ortega**, at 480. It thus appears that [counsel]   may have erred
in his constitutional duty to consult with petitioner about an
appeal. Petitioner submits that at that time he had no underst-
anding of Federal Rules of Criminal Procedure, muchless, Appel-.

13

ate Procedures or for that matter what an "appeal" is. therefore, to hold petitioner accountable for what he did not knowthat being, that he desired an appeal or that he demonstrated to counsel [sufficiently] an interest in an appeal——— would be plainly UNREASONABLE. As the Supreme Court in **Flores-Ortega** pondered, "the relevant question is not whether counsel's choices were strategic, but whether they were reasonable." **Id., Flores-Ortega,** at 481. See also Strickland at 688, "defendant must show that counsel's representation fell below an objective standard of reasonableness." It is expected that this Court find that counsel had a duty to consult with petitioner about an appeal.

Not too long ago, The Fifth Circuit held, that when a defendant establishes that his counsel was innefective by failing to perfect his appellate rights, a district court may either GRANT relief under §2255 or, alternatively, provide a "judicial remedy" of an out-of-time appeal by reentering the judg ment of conviction, thereby permitting the defendant a new window of time in which to file a Notice of Appeal. See **U.S. v West,** 240 F.3d 456, 460 n.3 (5thCir.2001). Under the doctrine of "reasonableness" petitioner requests such a remedy. Further, in relation to the formidable and battle-readiness, the adversary has and the Movant do not, petitioner respectfullyrequest that this Court hold an evidentiary hearing, **U.S. v. Popoola,** 881 F.2d 811, 812 (9th.Cir.1989) (An evidentiary hearing is mandatory whenever the record does not affirmatively manifest the factual or legal invalidity of the petitioner's claims."); **U.S. v. Blaylock,** 20 f.3d 1458, 1465, 1469 (9th.Cir.1994) (district court abused discretion by denying evidentiary hearing on claims of inefective assistance of counsel which, assuming accuracy of factual allegations, provide basis for relief. Essentially, the Fifth Circuit in a similar vein held:

14

"In an unpublished opinion, we vacated a district court's denial of a §2255 motion based on a similar claim. **See U.S. v. Bergeron**, 74 F.3d 1238 (5th.Cir.1995). We reasoned that counsel is obliged to protect his client's right to appeal. **See Chapman v. U.S.** 469 F.2d 634, 636 (5th.Cir. 1972). If Bergeron did request an appeal, counsel was thus obliged to preserve his right to appeal. The record indicates that counsel did not file a notice of appeal. Neither did counsel seek to withdraw from representation of Bergeron ... If the facts alleged by Bergeron are true, **then Bergeron received ineffective assistance of counsel for counsel's failure to file a notice of appeal.**"

**Id., U.S. v. Clark,** 193 F.3d 845, 847 (5th.Cir. 1999)(emphasis added).

One of the errors petitioner would raise if his appeal is re-instated:

DEFENSE COUNSEL'S FAILURE TO CHALLENGE THE 16-LEVEL ENHANCEMENT FELL OUTSIDE "PREVAILING PROFESSIONAL NORMS." and,

DEFENSE COUNSEL'S FAILURE TO SEEK POTENTIALLY FRUITFUL DOWNWARD ADJUSTMENT UNDER U.S.S.G. §4A1.3, BASED ON THE FACT THAT PETITIONER'S CRIMINAL HISTORY CATEGORY III "OVERSTATES" THE SERIOUSNESS OF HIS PRIOR CRIMINAL HISTORY; FALLS OUTSIDE "PREVAILING PROFESSIONAL NORMS."

## CONCLUSION

Based on the foregoing, Petitioner prays that this Court re-instate his appellate rights, by providing the Fifth Circuit's judicial remedy in **U.S. v. West,** 240 F.3d 456 (5th.Cir. 2001), that is, in the form of an out-of-time appeal.

Petitioner is presently indigent and respectfully, request that the Court GRANT him counsel under CJA §3006A.

Respectfully submitted,

SERGIO GONZALEZ-DIAZ

## CERTIFICATE OF SERVICE

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing Motion is true and correct to the best of my knowledge pursuant to 28 U.S.C. § 1746.

I also hereby certify that I have caused to be delivered said documents to the following parties via first-class mail, pre-paid and placed in the Prison Mail Box pursuant to the Mail-Box Rule in Houston v. Lack, 487 U.S. 266 (1988); that being, the Original and 2 copies of the same, addressed to:

> UNITED STATES DISTRICT COURT
> SOUTHERN DISTRICT OF TEXAS
> BROWNSVILLE DIVISION
> 600 E. HARRISON ST.
> BROWNSVILLE, TX. 78520

and one copy of the same sent to the U.S. ATTORNEY'S OFFICE at:

> U.S. ATTORNEY'S OFFICE
> OSCAR PONCE, ESQ.,
> 600 E. HARRISON ST. # 201
> BROWNSVILLE, TX. 78520

On July/ 02 /2004

Respectfully Submitted,

SERGIO GONZALEZ-DIAZ
pro-se.

## PRAYER

Wherefore, it is prayed that the God of creation rule in the hearts of men and that this Honorable Court rule wisely.

16