```
                   IN THE UNITED STATES DISTRICT COURT
                        SOUTHERN DISTRICT OF TEXAS
                           BROWNSVILLE DIVISION


                                          )
UNITED STATES OF AMERICA                  )
                                          ) CRIMINAL ACTION NOS.
VS.                                       ) B-03-377 and
                                          ) B-01-1318-M
JORGE LOPEZ-ORDONEZ                       )
                                          )


            REVOCATION OF SUPERVISED RELEASE AND SENTENCING
                  BEFORE THE HONORABLE HILDA G. TAGLE
                         SEPTEMBER 29, 2003
                              VOLUME 1

APPEARANCES:

For the Government:          MR. OSCAR PONCE
                             Assistant United States Attorney
                             600 East Harrison, Suite 201
                             Brownsville, Texas   78520

For the Defendant:           MR. RICHARD RODRIGUEZ
                             Attorney at Law
                             1117 East Harrison Ave.
                             Harlingen, Texas   78550



Transcribed by:              HEATHER HALL
                             Official Court Reporter
                             600 E. Harrison, Box 16
                             Brownsville, Texas   78520
                             (956)548-2510

  Proceedings recorded by mechanical stenography, transcript
produced by computer.
```



1       *(The Court heard other matters.)*

2       THE COURT:  03-CR-377, the United States of America

3  versus Jorge Lopez-Ordonez.  What says the government?

4       MR. PONCE:  Oscar Ponce for the government.  Ready.

5       THE COURT:  What says the defendant?

6       MR. RODRIGUEZ:  Richard Rodriguez here for Mr. Ordonez.

7  We do have some objections, Your Honor.

8       *(The Court heard other matters.)*

9       THE COURT:  Jorge Lopez-Ordonez.

10      MR. PONCE:  Oscar Ponce for the government.

11      THE COURT:  All right.  First, is there an objection to

12 the report and recommendation of the magistrate judge?

13      MR. PONCE:  No objection, Your Honor.

14      MR. RODRIGUEZ:  Your Honor, the only objection we had

15 was to the PSI.

16      THE COURT:  Then the magistrate judge's report and

17 recommendation is approved and is adopted by the Court, and the

18 defendant's plea of guilty is accepted.  And based upon the

19 evidence in the record at re-arraignment, the Court finds that

20 the defendant, Jorge Lopez-Ordonez, is guilty of the offense of

21 being an alien unlawfully found in the United States after

22 deportation having previously been convicted of an aggravated

23 felony as alleged in this indictment.  The Court, having found

24 the defendant guilty, will proceed with sentencing.

25      Mr. Rodriguez, have you reviewed the presentence report with

1  your client?

2       MR. RODRIGUEZ:  I have, your Honor.

3       THE COURT:  And there is an objection, but before I take

4  up that objection in argument and -- I'll ask about the

5  revocation in cause number 01-1318-M -- although I did not call

6  it I don't think.  Let me see.

7     Are you ready -- is the government ready to proceed?

8       MR. PONCE:  Yes, Your Honor.

9       THE COURT:  Mr. Rodriguez, are you ready to proceed in

10  the revocation pending right now?

11       MR. RODRIGUEZ:  We are, Your Honor.

12       THE COURT:  All right.  And, sir, is your name -- well,

13  you are Jorge Lopez-Ordonez?

14       THE DEFENDANT:  My true name is Sergio Gonzales-Diaz.

15       THE COURT:  Well, let me place you under oath for that

16  purpose.  Please raise your right hand.

17     (Defendant sworn.)

18       THE COURT:  All right.  Let me see.  There was somebody

19  who -- I don't know whether it was this man -- that had

20  something stated about how it was difficult to ascertain what

21  his true name was.  Because I'm looking at paragraph 33, and

22  that report says that he has used several aliases, but he stated

23  during the presentence investigation interview that his true

24  name is Sergio Gonzales-Diaz.

25     Tell me, sir, now that you have been placed under oath, do

1  you understand that anything that you tell the Court under oath
2  that is not true and that is being said for the purpose of
3  misleading the Court can subject you to prosecution for
4  aggravated perjury; that is, making a sworn statement in court
5  that is not true and that you know it's not true and it is with
6  the intent to mislead the Court.  Do you understand that?
7          THE DEFENDANT:  Yes, Your Honor.
8          THE COURT:  Okay.  And what is your true legal name?
9          THE DEFENDANT:  Sergio Gonzales-Diaz.
10         THE COURT:  Have you also been known by the name of
11  Jorge Lopez-Ordonez?
12         THE DEFENDANT:  That's the first time I was here.  I
13  used that name.  I used that name in order that I could accept
14  that and be deported.  At that time perhaps I thought it would
15  save my name or -- well, perhaps that time I didn't say
16  anything.  But I was offered the opportunity to say something
17  like you're doing right now, and -- and now I'm paying for it,
18  for not saying anything to the judge at the sentencing.
19     But at that time I was offered the opportunity to fight my
20  case, but I was offered -- but I was offered to be deported at
21  that time, and in order not to waste any more time, I accepted
22  the fact that I was guilty and -- even despite the fact that I
23  had nothing to do with this matter.  But I was involved in --
24  because I came from Florida, and I came to -- came to pick up
25  two people.  They're relatives of mine.

```
 1        I'm saying this now because I was given the opportunity to
 2   say so in 1996, and I didn't.  I was working in Okichobi,
 3   Florida, and my relatives were coming and I rented -- and I
 4   rented those in order to get to San Antonio in order to go there
 5   and pick up my relatives.
 6        THE COURT:  Okay.  Well, let me point out two things to
 7   you:  One, I was asking you about your name, and I'm asking you
 8   under oath whether -- what your true legal name is.  And you
 9   have told me that your true legal name is Sergio Gonzales-Diaz.
10        THE DEFENDANT:  Sergio Gonzales-Diaz.
11        THE COURT:  And the other thing that you must know is
12   that I'm not in a position to relitigate the case -- any cases
13   in which you have been found guilty in the past.  I understand
14   what you're trying to tell me now is that you're feeling maybe
15   that you should have spoken up before if you intended to, I
16   guess, dispute the facts of the case that you were found guilty
17   of.  But the fact of the matter is, right now I'm asking you
18   about your true legal name.
19        And, second -- well, the Court having found that you -- that
20   is your correct name, I now ask you whether on June 8th, 2001,
21   were you convicted of aiding and abetting a certain alien under
22   the name of Antelmo Castillo-Martinez, also known as Jorge
23   Lopez-Ordonez?
24        THE DEFENDANT:  It is true.  That is correct, Your
25   Honor.
```

```
 1            MR. PONCE:  Your Honor, if I may, I think that under
 2   that case number, on the 2001, he said that his name was Antelmo
 3   Castillo-Martinez.
 4            THE COURT:  That's what I said.
 5            MR. PONCE:  Oh, I'm sorry, Your Honor.  I misheard.  In
 6   regards to that, I don't know if the Court would want to go more
 7   into that.  I have a note here in the file regarding that motion
 8   to revoke -- that petition -- that this defendant, on May the
 9   31st in open court, told the Court that his true name was
10   Antelmo Castillo-Martinez.  So I'm not sure at this point which
11   one it really is, but I thought I would make the Court aware of
12   that, for that motion to revoke petition.
13            THE COURT:  Okay.  Well, I'm asking you again, sir.  On
14   June 8th, 2001, were you found guilty of the offense of aiding
15   and abetting a certain alien under the name of Antelmo
16   Castillo-Martinez, also known as Jorge Lopez-Ordonez?
17            THE DEFENDANT:  Yes, Your Honor.
18            THE COURT:  After having been found guilty, did you --
19   are you -- were you sentenced to a 90-day term of imprisonment
20   while -- I mean, and, thereafter, placed on probation for a
21   period of three years?
22            THE DEFENDANT:  Yes, Your Honor.
23            THE COURT:  Did you understand that the conditions of
24   probation included that you were not to violate the law, state,
25   federal or local?
```

1   THE DEFENDANT: That is correct, Your Honor.

2   THE COURT: So at the time that your probation
3   supervision began on June 8th, 2001, did you understand that
4   you -- it was necessary that you not violate the law, state,
5   federal or local?

6   THE DEFENDANT: Yes, Your Honor.

7   THE COURT: Have you received a copy of the petition
8   filed with the Court on May 19th, 2003, that alleges that you
9   violated your condition of probation in that cause number by
10  committing the offense of being an alien unlawfully found in the
11  United States after deportation and that this occurred on or
12  about April 11th, 2003?

13  THE DEFENDANT: The revocation petition? Did I commit
14  it or not? Yes, I did.

15  THE COURT: How do you plead to that allegation, true or
16  not true?

17  THE DEFENDANT: It is true.

18  THE COURT: Then based upon your plea of true, the Court
19  finds that you have violated your terms of probation in cause
20  number 01-1318-M as alleged in this petition. The Court having
21  found you guilty in cause number 03-CR-377 and having found that
22  you have violated your terms of probation as -- in cause number
23  01-1318 will now proceed with sentencing.

24  Mr. Rodriguez, have you reviewed the presentence report with
25  your client?

1          MR. RODRIGUEZ:  I have, Your Honor.

2          THE COURT:  And you have indicated that there are
3  objections?

4          MR. RODRIGUEZ:  There is one, Your Honor, to paragraph
5  13 where -- wherein it says that on December 17th, 1996, he was
6  convicted of alien smuggling and committing it for profit.
7  We -- we believe that according to the judgment from the
8  San Antonio case, there is no mention of it being committed for
9  profit; in other words, any type of penalty or fine assessed for
10 a profit offense.

11         THE COURT:  Okay.  You're talking about cause number
12 SA-96-CR-9792?

13         MR. RODRIGUEZ:  Oh, I'm sorry.  I'm sorry.

14         THE COURT:  The transporting of illegal aliens?

15         MR. RODRIGUEZ:  Okay.  No.

16         THE COURT:  Is that the offense that you're talking
17 about?

18         MR. RODRIGUEZ:  No, I'm not, Your Honor.  I'm sorry.
19 I'm talking about the other offense.

20         THE COURT:  Well, tell me which one you're talking
21 about.

22         MR. RODRIGUEZ:  The PSI I was referring to was the case
23 number -- the present one, the CR-377.

24         THE COURT:  I know this is this cause number, but you're
25 talking about the case number --

```
 1            MR. RODRIGUEZ:  Oh, there's -- he was convicted in 1996,
 2   and the case number is SA-96-CR-2792.
 3            THE COURT:  Okay.  All right.  Then -- and you're
 4   objecting to --
 5            MR. RODRIGUEZ:  The provision that it was committed for
 6   profit.
 7            THE COURT:  All right.  Mr. Ponce?
 8            MR. PONCE:  Your Honor, our response is that the
 9   judgment does not have that information within it.  In fact, if
10   the Court looks at paragraph 23 regarding the details of that
11   particular conviction, there is no question that this individual
12   did, in fact, transport those individuals -- a total of 20 --
13   and they were going to pay approximately $700 each for
14   transportation to North Carolina.  And that's reflected in
15   paragraph 23.
16            THE COURT:  All right.  Anything else from probation?
17            THE PROBATION OFFICER:  Nothing other than what's stated
18   on the response, Your Honor.
19            THE COURT:  All right.  Mr. Rodriguez, anything else you
20   want to say on behalf of your client in connection with this
21   objection?
22            MR. RODRIGUEZ:  Your Honor, just under 8 U.S.C. 1324,
23   the provision that he was convicted under, there's also
24   subparagraph B -- or capital B -- where it says that "A person
25   who violates subparagraph (A) shall, for each alien in respect
```

1   to whom such a violation occurs --"  And then it goes on to say,
2   "In the case of a violation of sub(A)(ii)(I) in which the
3   offense was done for the purpose of commercial advantage or
4   private financial gain be fined under Title 18..."
5       Well, he was never fined in this case, so it is our
6   contention that he wasn't convicted for a profit motive.  And
7   that's what our whole basis is.
8           THE COURT:  Okay.  The Court overrules the objection.
9   The Court -- although he has not been found and, I guess,
10  basically had his sentence or punishment enhanced as a result of
11  a finding of a profit -- I mean, regardless of the fact that
12  that has not occurred, the Court finds that the evidence in the
13  case -- well, you know what?  I think that's basically what he
14  was trying to say when he was -- when I asked him about the
15  revocation.
16      So if he wishes -- if you wish to have him testify to refute
17  the finding of profit here, I think that's what -- where he was
18  going with that, but, you know, I'm not going to presume
19  anything.  But so that I can have not only the evidence that's
20  in the PSR, but what he wishes to address the Court about if it
21  is on that issue --
22          MR. RODRIGUEZ:  He would like to.
23          THE DEFENDANT:  That's -- in effect that is what
24  effectively I was trying to say that could be truthful.  Well,
25  that can be proven because the document -- there is a document.

1  A document exists with the one -- that dolly to pull that
2  vehicle. It was one-way from Fort Pierce, Florida, to Longview,
3  Texas. It was rented one-way.
4      Well, I was going to pick up this family that came, my
5  relatives. And I was told when I got to Longview, Texas, that
6  they were having problems, and that same day, that 6th --
7  September 6th, when I got to Longview, Texas -- and that same
8  day, I got there to Longview, Texas. And that very same day I
9  was told that my -- I was told that my relatives were having
10 problems in San Antonio and that the highway police -- the DPS
11 trooper had stopped them, and they, in turn, took them to a
12 hotel. And they wanted -- they didn't allow them to be
13 transported in that vehicle.
14     And they told me that if I wanted to pick my family up or my
15 relatives up -- pick them up, they were there in a hotel in
16 San Antonio, so I went to where they were. They towed my car
17 with the same dolly or rig that I had rented. I got to
18 San Antonio, picked up my relatives. They left, and I remained
19 with them. And then when they left, I was behind them for about
20 an hour or so afterwards.
21     And I saw a vehicle that was stopped on the side of the
22 shoulder of the road by a truck. It was like a regular truck.
23 And I thought it was some problem as far as the vehicle was
24 concerned, and I turned around in order to help them out. And
25 when I saw that -- or got there, I saw that the police were

1   there, and I kept on going and I went by.  And then further on
2   down the road, I was stopped.  And then when I was stopped, I
3   was taken to the office of the INS and was detained.  And I was
4   taken there, and when I was taken to court, I was accused of
5   transporting 20 undocumented aliens.  And now they're saying
6   that it was for lucrative advantage.
7       And at that time, I lost my vehicle.  I lost my liberty, and
8   now I'm being -- having more points assessed in my -- against me
9   now because of that.  And now that I -- and what I used; in
10  other words, the dolly for the U-haul, it's true, and it's the
11  INS.  And the documents are there with my driver's license.  My
12  name on all those documents as far as the dolly that I rented,
13  that I rented it only one-way from Fort Pierce to Longview,
14  Texas.
15      And now I would only ask that you take this case in
16  consideration, and if you think that justice has been carried
17  out, I'm willing to accept whatever.  But things happen
18  sometimes when one doesn't speak up, and when they give you a
19  chance, one doesn't do it.  Perhaps it's too late to do so now,
20  but I'm doing to and perhaps so that all these points won't be
21  assessed against me that they're doing -- that they're putting
22  against me.
23      And another matter, my family is important to me.  It's the
24  most important thing to me in my life.  And my family and my
25  relatives, what's even more important, they're even willing to

1  go live in Mexico.  My wife is an American citizen.  My wife and
2  my children, all of us are going to go to Mexico when this
3  happened.  We were just waiting for the children to get old
4  enough to do so, but this happened and -- I don't know if there
5  would be any way that you could consider this.
6      I wouldn't ask for clemency, but I'm asking only for justice
7  so that my case can be looked at very carefully.  I've always
8  believed in justice and the fact that the United States has the
9  best laws.  But nevertheless, one perhaps makes the mistake of
10 breaking these laws, but I would ask you to consider this.
11 Well, and I would also ask if you could consider that the whole
12 time I've been here, I've had medical problems and been in the
13 hospital.  If I'm going to be given time, that I would ask that
14 it be taken into account the times I've been given medical
15 treatment because many times when I've asked for it or needed
16 it, they haven't given me the necessary medical attention.  And
17 one time I had to be taken to --
18      THE COURT:  Excuse me.  I gave you the opportunity to
19 testify regarding the -- what you're saying was the fact that
20 there was -- what you were convicted of was not, in fact, done
21 for profit, but now the government has the opportunity to
22 cross-examine you.
23      MR. PONCE:  Your Honor -- Your Honor, I would at this
24 point ask the Court to allow me -- to allow the government to
25 continue the sentencing so that I may get the reports regarding

1  that incident and how it happened.  I -- based on what he said
2  and what I read here involving 20 aliens and the fact that he
3  was going to get paid $500 -- $700 for each alien, I would
4  surmise that there probably may have been some kind of
5  surveillance where individuals were initially stopped and then
6  moved over to a hotel with perhaps agents already gathering
7  information as to others involved.  And then they were just
8  waiting for the others to show up so they could continue the
9  surveillance and then arrest as many of those involved as
10  possible.  I would ask for a week so that I may get those
11  reports so I may properly cross-examine this defendant.
12          THE COURT:  All right.  Continuance granted.
13          MR. RODRIGUEZ:  For one week, Your Honor?
14          THE COURT:  Yes.  She'll give you the setting date -- or
15  the exact time and date.  Thank you.
16          MR. RODRIGUEZ:  Thank you, Your Honor.  May I be
17  excused?
18          THE COURT:  Yes.
19          MR. PONCE:  Your Honor, may I be excused?
20          THE COURT:  Yes.
21                              * * *
22              (End of requested transcript.)
23                             -oOo-
24    I certify that the foregoing is a correct transcript from
25  the record of proceedings in the above matter.

```
 1
 2   Date:  April 25, 2005
 3                                              /s/ Heather Hall
 4                                              Signature of Court Reporter
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```